**ESTATE OF Louis F. BONNER, Sr., Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

No. 95–20895
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 4, 1996.

Kenneth Alan Love, Love & Hrbacek, Sugar Land, TX, for plaintiff-appellant.

Gary R. Allen, David I. Pincus, Pamela C. Berry, U.S. Department of Justice, Tax Division, Appellate Section, Washington, DC, for defendant-appellee.

Before GARWOOD, WIENER and PARKER, Circuit Judges.

PER CURIAM:

The estate of Louis F. Bonner, Sr., Appellant ("the estate") filed suit to recover a refund of approximately $425,000 in estate taxes assessed by and paid to the Internal Revenue Service ("IRS" or "the government"). The estate and the government filed cross motions for summary judgment based on a joint stipulation of facts, but differing interpretations of the applicable law. The

district court granted summary judgment for the government, ordering that the estate was not entitled to a refund of any estate taxes paid. We reverse.

## FACTS

The estate's decedent ("Bonner") died on January 11, 1989. At the time of his death, Bonner owned the following properties:

1) A fee simple 62.5% undivided interest in real property consisting of 2,107.33 acres in Angelina County, Texas ("the ranch");

2) A fee simple 50% undivided interest in real property located in New Mexico ("New Mexico property");

3) A fee simple 50% undivided interest in a 56 foot pleasure boat ("the boat").

The remaining 37.5% interest in the ranch, 50% interest in the New Mexico Property and 50% interest in the boat were owned by a trust established by the will of Bonner's wife ("Mrs. Bonner") who died on December 7, 1986. The parties also stipulated that the fair market values of 100% fee ownership of the properties on the date of Bonner's death were $1,800,000 for the ranch, $175,000 for the New Mexico property and $30,000 for the boat.

Mrs. Bonner's estate elected to claim a marital deduction for the bequest to the trust under the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 2056(b)(7). The trust satisfied the test for qualified terminable interest property (QTIP) under that provision. Accordingly, a marital deduction was allowed to Mrs. Bonner's estate for the value of these property interests passing to the trust. As required by I.R.C. § 2044, the value of these undivided interests held by the trust were included in the taxable estate of Bonner upon his subsequent death. The undivided interests owned by Bonner at his death were included in his taxable estate pursuant to I.R.C. § 2033.

Per the appraisal submitted by the estate as part of its summary judgment evidence, the fair market value of Bonner's interest in the ranch claimed on the estate's tax return included a 45% discount (below 62.5% of $1,800,000) based on the fact that is was a fractional undivided interest. The New Mex-

ico property and the boat were likewise discounted on the estate's tax return. The government did not stipulate to the appropriate amount of discount, if any, based on the undivided nature of the interests in question in the event that the Court finds that a discount is allowable as a matter of law.

On cross motions for summary judgment, the district court, adopting the reasoning of the government, held that the estate is not entitled to a refund of estate tax, granted the government's motion for summary judgment and denied the estate's motion for summary judgment.

## STANDARD OF REVIEW

■ This appeal is taken from a final summary judgment predicated upon stipulated facts and the district court's interpretation of a federal statute, which we review *de novo*. *Douglass v. United Services Automobile Assoc.*, 65 F.3d 452 (5th Cir.1995).

## AVAILABILITY OF FRACTIONAL INTEREST DISCOUNT

The sole question before us is whether the estate is precluded from applying a fractional interest discount against the value of these three properties for federal estate tax purposes.

■ We begin by recognizing that valuation of interests in property for federal tax purposes is a question of fact. *Propstra v. United States*, 680 F.2d 1248, 1251 (9th Cir. 1982). Further, courts have consistently recognized that the sum of all fractional interests in a property is less than the whole and have upheld the use of fractional interest discounts in valuing undivided interests. *See, e.g. Estate of Bright v. United States*, 658 F.2d 999 (5th Cir.1981) (*en banc*). The discount is an acknowledgment of the restrictions on sale or transfer of property when more than one individual or entity hold undivided fractional interests. *Estate of Wildman v. C.I.R.*, 58 T.C.M. 1006, 1989 WL 153505 (1989). Potential costs and fees associated with partition or other legal controversies among owners, along with a limited market for fractional interests and lack of

control, are all considerations rationally related to the value of an asset. *See id.*

■ The government takes the position that the interest held by the QTIP trust and the interest held by Bonner merged at the time of Bonner's death, pursuant to the plain language of § 2044 [1], extinguishing the fractional undivided interests and resulting in 100% fee ownership of the assets by the estate.

Section 2031(a) provides that the value of a decedent's gross estate includes the value of property included in his gross estate pursuant to §§ 2033 and 2044. Under § 2033, a decedent's gross estate includes the value of all property that decedent owned at the time of his death. Under § 2044(a) and (b)(1)(A), it also includes the value of any property for which a deduction was allowed for the decedent's spouse's taxable estate under § 2056 by reason of the QTIP provisions of § 2056(b)(7). Property thus includable in the gross estate of the decedent "shall be treated as property passing from the decedent." 26 U.S.C. § 2044(c). The government contends, and the district court found, that the "plain language of § 2044 resulted in 100% fee ownership by the estate at the moment of Bonner's death, and precluded any potential problems with fractional ownership." Such a reading is not supported by precedent or logic. In *Estate of Bright v. United States, supra,* this Court, sitting *en banc,* rejected a similar argument, there termed the "doctrine of family attribution." In that case, Bright held a 27½% interest in an asset as executor of his deceased wife's estate, while simultaneously holding an additional 27½% interest in the same asset in his individual capacity. This Court rejected the government's contention that Bright's interests for estate tax purposes should be treated as one 55% interest in the asset.

In *Bright,* we considered Reg. 20.2031–1(b), which provides:

The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

The "willing seller" is not the estate itself, but is a hypothetical seller. Therefore, family attribution, which depends on the identity of seller as the legatee and the executor, cannot control the value of the asset.

■ The question before us is controlled by the holding in *Bright.* Although § 2044 contemplates that the QTIP property will be treated as having passed from Bonner for estate tax purposes, the statute does not require, nor logically contemplate that in so passing, the QTIP assets would merge with other assets. The assets in the QTIP trust could have been left to any recipient of Mrs. Bonner's choosing, and neither Bonner nor the estate had any control over their ultimate disposition. We are precluded from considering evidence submitted by the government regarding who actually received the assets. An estate tax is an excise tax on the transfer of property at death and accordingly the valuation is made as of the moment of death and must be measured by the interest that passes, as contrasted with the interest held by the decedent before death or the interest held by the legatee after death. *Bright,* 658 F.2d at 1006.

In addition to arguing that § 2044 mandates merging of the Bonners' fractional interests in the assets, the government also argues that public policy dictates that the Bonners not use the QTIP device to avoid paying taxes on the unified value of the

1. The pertinent part of § 2044 reads:
SEC. 2044. CERTAIN PROPERTY FOR WHICH MARITAL DEDUCTION WAS PREVIOUSLY ALLOWED.
(a) GENERAL RULE. The value of the gross estate shall include the value of any property to which this section applies in which the decedent has a qualifying income interest for life.
(b) PROPERTY TO WHICH THIS SECTION APPLIES. This section applies to any property if—

(1) a deduction was allowed with respect to the transfer of such property to the decedent—
(A) under section 2056 by reason of subsection (B)(7) thereof, or . . .
(c) PROPERTY TREATED AS HAVING PASSED FROM DECEDENT. For purposes of this chapter and chapter 13, property includible in the gross estate of the decedent under subsection (a) shall be treated as property passing from the decedent.

property. In fact, public policy mitigates in favor of the estate's position in this litigation. The estate of each decedent should be required to pay taxes on those assets whose disposition that decedent directs and controls, in spite of the labyrinth of federal tax fictions. In this case, Mrs. Bonner controlled the disposition of her assets, first into a trust with a life interest for Bonner and later to the objects of her largesse. The assets, although taxed as if they passed through Bonner's estate, in fact were controlled at every step by Mrs. Bonner, which a tax valuation with a fractional interest discount would reflect. At the time of Bonner's death, his estate did not have control over Mrs. Bonner's interests in the assets such that it could act as a hypothetical seller negotiating with willing buyers free of the handicaps associated with fractional undivided interests. The valuation of the assets should reflect that reality.

## CONCLUSION

Based on the foregoing, we reverse the summary judgment for the government. Because the record discloses a genuine issue of material fact concerning the appropriate value of the fractional interest discounts, we remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.