T.C. Memo. 2002-299


UNITED STATES TAX COURT


ESTATE OF JOHN L. BAIRD, DECEASED, ELLEN B. KIRKLAND AND J.
       SAMUEL BAIRD, CO-EXECUTORS, Petitioners v.
       COMMISSIONER OF INTERNAL REVENUE, Respondent

ESTATE OF SARAH W. BAIRD, DECEASED, ELLEN B. KIRKLAND AND J.
       SAMUEL BAIRD, CO-EXECUTORS, Petitioners v.
       COMMISSIONER OF INTERNAL REVENUE, Respondent


   Docket Nos. 8656-99, 8657-99.    Filed December 6, 2002.


   William T.F. Dykes, for petitioners.

   Wanda M. Cohen, for respondent.

MEMORANDUM OPINION

GERBER, Judge:  In a prior opinion,[1] we held that the estates of John and Sarah Baird were entitled to use a 60-percent discount in valuing their respective fractional interests in 16 tracts of realty.  Both estates moved for litigation and administrative costs under section 7430.[2]  The Estate of John L. Baird is seeking litigation and administrative costs in amounts of at least $142,612.47 and $622.50, respectively.  The Estate of Sarah W. Baird is seeking litigation and administrative costs in amounts of at least $141,191.58 and $592.40, respectively.[3]

Subsections (b) and (c) of section 7430 provide that prevailing parties, in order to recover litigation costs, must meet the following requirements:  (1) They exhausted available administrative remedies; (2) they substantially prevailed in the controversy; (3) the position of the United States in the proceeding was not substantially justified; (4) they meet certain net worth requirements; (5) they did not unreasonably protract

---

[1] Estate of Baird v. Commissioner, T.C. Memo. 2001-258.  The findings in that opinion and the parties' stipulation of facts are incorporated by this reference.

[2] All section references are to the Internal Revenue Code, as modified and in effect for the periods under consideration. Rule references are to the Tax Court's Rules of Practice and Procedure.

[3] In the circumstances of these consolidated cases, there was no need for an evidentiary hearing.  We rule on the estates' motion for litigation costs based on the existing record and the parties' submissions.  See Rule 232(a)(1) and (2).

the proceeding; and (6) the amount of costs is reasonable. Failure to meet any of the above-listed requirements will defeat the recovery of litigation costs.

Respondent contends that the estates are not entitled to litigation and administrative costs because respondent's position was substantially justified. In the alternative, respondent contends that the estates' attorney's fees exceed the limits set forth in the statute and are, therefore, not reasonable. On the other hand, the estates contend that respondent's position was not substantially justified and/or that the amounts claimed are reasonable.

Background

John L. Baird and Sarah W. Baird were married and died within 1 year of each other. John's and Sarah's estates each contained a similar (14/65 and 17/65, respectively) fractional undivided interest in a family trust. The trust property consisted of 16 parcels of real property and was held in undivided ownership by family members related to the decedents.

On March 18, 1996, John's estate tax return was filed with his 14/65 undivided community property interest reported at a value of $707,972. In support of that value, John's estate attached an appraisal opinion to the return. The appraisal contained opinions as to the fair market value of the 16 parcels

of realty and applied a 25-percent discount to account for the decedent's fractional interest.

On January 31, 1997, Sarah's estate reported that her 17/65 interest in the trust had a $665,686 value. Sarah's estate relied on the same fair market value for the 16 parcels of realty, but used a different appraiser for the discount. Based on that appraiser's report, a 50-percent fractionalization discount was applied to Sarah's 17/65 interest. On February 24, 1997, John's estate filed an amended return claiming a refund on the basis of the opinion used for Sarah's estate tax return and applying the 50-percent discount that had been used by Sarah's estate. The 50-percent discount resulted in a reported value of $550,378 for John's 14/65 interest.

Respondent's valuation engineer, a forester, also valued the parcels in the course of examining the estates' tax returns. Respondent, after considering appraisals relied on by the estates' and his own valuation engineer's reports, issued a 30-day letter, on June 26, 1998, containing respondent's position, as follows:

> After a review of the appraisals provided by the taxpayer the engineering group recommends the timber volumes and unit prices [of the estate's appraisal reports] be accepted. A change to the discounts in valuing the fractional interest is recommended as per the attached report. The service's approach is more fully explained therein.

The valuation engineer's appraisal report, attached to the 30-day letter, generally agrees with the estates' valuation of fair market value of the 16 parcels, but does not accept the discounts applied by the estates. The engineer's report contains a discussion of the fact that (1) John's estate applied an increasing progression of discounts and that (2) each discount was supported by an opinion from a third party. The valuation engineer's report also provides an analysis of the estates' appraisals and proposed comparables. Finally, the report contains an analysis of valuation cases and the following explanation for arriving at a $975,091 value for John's 14/65 interest:

> Using the recommended full interest value for the 2,957 acres of $4,685,331, a discount can be determined using a cost of a revised timber inventory, surveying the property into equal valued "lots" and legal costs associated with the partition of the property. Dividing the property into 40 acre "lots", or variations thereof, and an estimated $1,000 per survey mile results in survey cost[s] of $49,250. A revised timber inventory would cost $8,871. Legal cost, as recommended by the Estate Agent, would approximate $100,000. The total cost of partition would approximate $158,121. Louisiana law cites all partition cost[s] are borne in the pro-rata share of ownership. Subtracting the partition cost of $158,121 from the recommended value of $4,685,331, results in an after cost value of $4,527,210. Mr. John Baird owned a 14/65th interest in the property or a total recommended estate value [of] $975,091.

In the March 4, 1999, notice of deficiency, respondent relied on the valuation engineer to determine that John's 14/65 interest had a fair market value of $975,091. In that regard,

respondent's position during the administrative proceeding was that the only reduction or discount from the fair market value of the trust's real property should be the cost to partition the realty so that the partitioned interest of each decedent could be converted into and sold as a full fee interest. Under that partition approach, the fractional interest becomes a fee interest and thereby not subject to any discount for fractionalization, other than the cost to partition.

On March 18, 1999, John's estate filed a second claim for a refund based on an increase in the claimed discount from 50 to 60 percent. That discount resulted in a $504,610.37 value for John's 14/65 interest. Likewise, on May 11, 1999, Sarah's estate filed an amended return, claiming a refund on the basis of an increased fractionalization discount from 50 to 60 percent. The 60-percent discount resulted in a reported value of $449,456.27 for Sarah's 17/65 interest.

After the issuance of the notices of deficiency and the filing of the estates' petitions, the Appeals officer attempted to arrange a settlement conference with the estates' representative. Respondent points out that no settlement conference was held because the estates' representative "refused to meet with the appeals officer in Houston unless the appeals officer would agree to a minimum fractional interest discount of 45% for each estate." Respondent also reports that "on the eve

of trial, respondent's counsel made an offer to discuss settlement with petitioners' counsel * * * [and that] discussion was futile since petitioners' counsel responded by demanding a 70% fractionalization discount, once again increasing the discounts previously demanded."

Because of the refusal to meet, the estates' representatives did not present facts or arguments to respondent. The estates did not address or discredit respondent's position that partition was a viable alternative. It was not until the trial of this case that respondent was confronted with evidence reflecting that partition may not have been a viable alternative.[4] Respondent's position remained essentially the same until the time of trial in both estate tax cases. During the administrative proceeding, the estates changed their position several times by seeking larger discounts.[5]

The controversy we consider is dependent upon whether respondent's position in the proceeding was not substantially

---

[4] Respondent was provided with one expert's report about 30 days before trial which was based on certain factual assumptions that would have affected the ability to partition. Those factual assumptions were not fully addressed, however, until the estates' witnesses testified at the trial.

[5] Our review of the record reveals that the position taken by Sarah's estate merely duplicates the position taken by John's estate. Accordingly, we analyze both through a discussion of the development of John's estate tax case and draw no meaningful distinctions between them. Other adjustments, including an administrative expense deduction, were also set forth in the notice, but settled by the parties before trial.

justified.  If respondent's position is found to be substantially justified, then the estates' claim for litigation costs will fail.[6]

Discussion

Section 7430(c)(4)(A) requires that, in order to qualify for recovering administrative or litigation costs, the estates must be the "prevailing party" in the proceeding.  Generally, the "prevailing party" is one who has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented.  Sec. 7430(c)(4)(A)(i)(I) and (II).  Based on that general rule or standard, the estates were the prevailing parties in these consolidated proceedings.

A party will not be considered a prevailing party, however, if the "United States establishes that the position of the United States in the proceeding was substantially justified."  Sec. 7430(c)(4)(B)(i).  Respondent's position in a proceeding is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and if it has a reasonable basis both in fact and law.  Pierce v. Underwood, 487 U.S. 552, 564-565 (1988).  The fact that respondent eventually loses or

_____

[6] If respondent's position is found not to be substantially justified, respondent contends, in the alternative, that the amount of the estates' claim for attorney's fees is unreasonable because it exceeds the statutory limit.

concedes a case, by itself, is not sufficient to establish that the respondent's position was or is unreasonable. Broad Ave. Laundry & Tailoring v. United States, 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, it is a factor to be considered. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991).

The valuation of a property interest for Federal estate tax purposes is a factual question. See Estate of Bonner v. United States, 84 F.3d 196, 197 (5th Cir. 1996); Sammons v. Commissioner, 838 F.2d 330, 333 (9th Cir. 1988), affg. on this point and revg. in part on another ground T.C. Memo. 1986-318. Prior to the issuance of the notices of deficiency, respondent accepted the estates' appraisal of the fair market value of the 16 parcels of realty held by the trust. Throughout the administrative and pretrial portions of these cases, the parties disagreed about the purely factual question of how much discount should be applied to the decedent's fractional interests. During the administrative proceeding, the parties relied on expert opinions and appraisals in support of their respective positions. The estates, at various times, sought progressively larger discounts of 25, 50, 60 and 90 percent.[7] Throughout the entire period, respondent contended that the cost to partition and sell

---

[7] The estates variously claimed 25-, 50-, and then 60-percent discounts for the same interests. At trial, the estates sought an increased discount of 90 percent.

fee interests was less than any of the discounts claimed by the estates.

Two of the estates' experts conducted studies of the relatively limited universe in which there have been sales of fractional interests in timberland. Based on those studies, the experts recommended a range of discounts that could be applied to the interests being considered by the Court. These experts did not address the question of partition or opine on a specific discount for either estate's fractional interest. Their opinions had been provided to respondent during the administrative proceeding.

The estates' third expert had personal involvement and experience in the purchase and sale of fractional interests. That expert provided the Court with specific instances of somewhat comparable sales of fractional interests in the vicinity of the subject realty. It does not appear that this expert's report was provided to respondent until about 1 month before trial. This expert's report did address the difficulties that can be encountered in partitioning real property. The expert also alluded to the difficulties surrounding the trusts in which the decedents held fractional interests, but the report did not establish those facts. Respondent was not confronted with the factual predicate that partition may not have been a viable approach until the trial when the estates' witnesses testified

about the difficulties that would be encountered if partition were attempted.

Courts, in approaching expert opinion evidence, are not constrained to follow the opinion of any expert when the opinion is contrary to the court's own judgment. Courts may adopt or reject expert testimony. Helvering v. Natl. Grocery Co., 304 U.S. 282, 295 (1938); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285. Valuation cases are usually fact specific and are relied on by litigants and courts for generalized guidance, but that do not establish bright line rules for valuation; i.e., do not establish specific percentage discounts to be applied under particular factual circumstances.

Respondent's position was that partition was a viable alternative and that the cost of partition would be less than the amount of the discounts claimed by the estates. Under respondent's position, a fractional interest could be purchased, followed by partition resulting in value based on a fee interest. The estates did not argue that partition and/or partition costs should not play a role in the process of valuing partial interests in property. Instead, at trial, the estates put on evidence of the factual impediments to partition, such as: Costs, delays in enjoyment of ownership, and legal problems. In effect, the estates advanced evidence that resulted in our

finding that partition was not a viable alternative. That evidence, however, was not made available to respondent during the administrative or pretrial portions of the proceeding.[8]

Significantly, the estates increased the amount of discount claimed from 25 to 50 percent, from 50 to 60 percent, and, finally, from 60 to 90 percent. Each claimed discount was supported by an opinion of an expert hired by the estates. No facts or legal principles changed from the time the 25-percent discount was claimed to the time the 90-percent discount was claimed. Considering those circumstances, the Commissioner's failure to change his position, settle, or accept the estates' position does not appear to be unreasonable. In particular, values or discounts reported or claimed on an estate tax return may be considered admissions and, to some extent binding or probative and may not be overcome without cogent proof that such admissions are wrong. Estate of Hall v. Commissioner, 92 T.C. 312, 342 (1989); Estate of Pillsbury v. Commissioner, T.C. Memo. 1992-425; Estate of McGill v. Commissioner, T.C. Memo. 1984-292.

The facts that are relevant in valuation cases are those that would be attributed to a hypothetical knowledgeable seller and buyer. United States v. Cartwright, 411 U.S. 546, 551

---

[8] We note that the estates' representatives refused to meet with Appeals and/or respondent's counsel unless the Government representatives agreed, in advance, to minimum discounts of 45 and 70 percent, respectively.

(1973).  A knowledgeable buyer or seller would aim to maximize profit and/or minimize cost in the setting of a hypothetical sale.  See Estate of Watts v. Commissioner, 823 F.2d 483, 486 (11th Cir. 1987), affg. T.C. Memo. 1985-595; Estate of Newhouse v. Commissioner, 94 T.C. 193, 218 (1990).

For example, a buyer's knowledge that realty could be easily partitioned would have an effect on the amount of discount applied in connection with a partial interest.  In such a situation, discounts, far in excess of the cost to partition, may not be warranted.  Similarly, if partition is not feasible, then the cost of partition would not have much effect on the amount of discount that could be attributable to a fractional interest.  In either event, the cost to partition may play some role in the valuation process.  This Court's decision that a 60-percent discount was appropriate was based on facts presented at trial and the testimony of the estates' expert witness.

Respondent was not confronted with the facts concerning the difficulties connected with the use of partition in these cases until receipt of one of the estates' experts' reports approximately 30 days prior to trial.  That report had not been provided to respondent prior to that time.  The facts relied upon by the expert had not been discussed with respondent due to the lack of a meeting with the estates' representatives.  Those facts

were not established prior to trial.  Accordingly, respondent's
position had a reasonable basis in fact or law.

We therefore hold that respondent's position in the
proceeding was substantially justified.  Having decided that, it
is not necessary to consider the reasonableness of administrative
and litigation costs claimed by the estates.

To reflect the foregoing,

<u>The estates' motion for
administrative and litigation costs
as supplemented will be denied in
Docket Nos. 8656-99 and 8657-99.</u>