**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-30625

THOMAS W. ROBERTS,

Plaintiff-Appellant,

versus

WGM SAFETY CORP, doing business as Willson
Safety Products Inc.; ACCEPTANCE INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
(96-cv-1337)

October 13, 1999

Before JONES and WIENER, Circuit Judges, and WALTER, District Judge.[*]

PER CURIAM:[**]

Plaintiff-Appellant, Thomas W. Roberts ("Roberts") raises two points of error on appeal. Roberts contends the district court: (1) erred in denying his motion for reconsideration filed after summary judgment was rendered against him, and (2) erred in granting the motion for summary judgment filed by Defendant-Appellee, WGM Safety Corp. ("WGM"). Finding no reversible error, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This products liability action arises out of injuries sustained by Roberts in the course and

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

**1**

scope of his employment as a maintenance mechanic at Pride Aviation in New Iberia, Louisiana. On the day of the accident, Roberts had been using a die grinder manufactured by Northern Hydraulics ("Northern"), and an attached cutting wheel manufactured by Norton Company ("Norton"). At the end of Roberts's shift, as he was putting away his tools for the day, he inadvertently engaged the die grinder, causing the cutting wheel to activate. Once activated, the cutting wheel broke apart and a fragment of the spinning wheel struck the WGM safety glasses Roberts was wearing, causing them to "rotate" and resulting in a blunt trauma injury to his right eye. Although the glasses partially shielded Roberts's face from the blow, he nevertheless suffered severe permanent damage to his right eye.

Evidence in the record indicates the Norton cutting wheel was accompanied by two warnings, one contained on a warnings disc and another in a safety guide. The warnings disc instructed users to "[a]lways wear impact resistant protective goggles, full face shield and respirator." The Norton safety guide instructed users to "always wear protective safety glasses or proper face shield." The instructions on the packaging of the WGM safety glasses stated that, although the glasses are designed to protect against "most commonly encountered hazards," "[e]ye protection devices cannot eliminate the possibility of eye danger under all circumstances." Hence, warned the package, a user should "[c]heck with [his] safety supervisor to be sure [he is] provided with the correct protection." It is undisputed that on the day of the accident, Roberts did not consult with his safety supervisor concerning the appropriate eye protection for the operations he was to perform.

As a result of Roberts's accident, he filed suit in Louisiana state court, naming WGM and its insurer, Acceptance Insurance, Northern and Norton as defendants. All defendants were sued pursuant to the Louisiana Products Liability Act ("LPLA").[3] In his complaint, Roberts alleged the safety glasses, die grinder and cutting wheel were defective and resulted in the accident and his subsequent injuries. The case was removed to federal district court for the Western District of

---

[3] LA. REV. STAT. ANN. §§ 9:2800.51-59 (West 1997).

Louisiana. Thereafter, each defendant filed a motion for summary judgment which the court granted.

With regard to WGM and Acceptance, the district court held that Roberts's use of the safety glasses at the time of the accident was not "reasonably anticipated" by the manufacturer. In reaching this conclusion, the court noted that Roberts failed to heed the instructions and warnings provided by Norton and WGM. Furthermore, as Roberts knew of the danger posed by fragmenting cutting wheels and, as he would have been instructed to wear both a protective face shield and goggles had he consulted his safety supervisor, WGM should not have reasonably anticipated Roberts's ill-fated choice to rely on the safety glasses alone for protection.

After the district court issued its order and memorandum ruling, Roberts filed a motion for reconsideration which the district court denied. Roberts timely filed a notice of appeal. During the pendency of this appeal, Roberts entered into settlement agreements with both Norton and Northern. Accordingly, Roberts's appeal as it relates to WGM is all that remains.

## II. DISCUSSION

This court reviews a grant of summary judgment de novo, applying the same standard as the district court.[4] According to this standard, all facts are viewed in the light most favorable to the non-movant and all reasonable inferences are drawn in favor of the non-movant.[5] Summary judgment is appropriate when the evidence presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter of law.[6] To carry a summary judgment burden, the movant must either affirmatively offer evidence that undermines one or more of the essential elements of the plaintiff's case, or must demonstrate that the evidence in the summary judgment record falls short of establishing an essential element of the plaintiff's case.[7] This court

---

[4] Melton v. Teacher's Ins. & Annuity Ass'n of America, 114 F.3d 557, 559 (5th Cir. 1997).

[5] Samuel v. Holmes, 138 F.3d 173 (5th Cir. 1998).

[6] River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc., 98 F.3d 857, 859 (5th Cir. 1996).

[7] Doe v. Beaumont Indep. Sch. Dist., 173 F.3d 274, 300 (5th Cir. 1999).

may affirm a grant of summary judgment regardless of the correctness of the district court's ruling when we find in the record an adequate, independent basis for that result.[8]

Louisiana Products Liability Act

Prior to any discussion particular to this case, an overview of the pertinent sections of the LPLA is required. The LPLA provides the "exclusive theories of liability for manufacturers for damage caused by their products."[9] A plaintiff bringing a products liability action faces a two-tiered burden of: (1) showing that his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) showing those damages arose from a reasonably anticipated use of the product.[10]

Glasses Functioned Properly

Although we supply our own rationale, the judgment of the district court must be affirmed. As mentioned previously, the district court based its grant of summary judgment on the premise that Roberts's use of the WGM glasses was not "reasonably anticipated" in terms of the LPLA, as he was aware of the obvious dangers of conducting grinding activities with only the WGM glasses as protection. While this approach ultimately produced the correct result, it was not necessary to metagrobolize the inquiry to such a degree when a more succinct analysis exists: The glasses worked properly, therefore no liability can attach to WGM.

A preliminary hurdle to any negligence analysis, including an inquiry under the LPLA, must be to determine if the item, in this case the glasses, proximately caused the injury in question.[11] Roberts cannot, and has not, shown that his eye injury was proximately caused by a characteristic of the glasses. Conspicuously absent from this record is any evidence indicating the glasses functioned any way other than properly or that the accident would not have been worse

---

[8] Lockart v. Kobe Steel Ltd.-Constr. Div., 989 F.2d 864, 865 (5th Cir. 1993).

[9] LA. REV. STAT. ANN. § 9:2800.54(A).

[10] Kampen v. American Isuzu Motors Inc., 157 F.3d 306, 308 (5th Cir. 1998) (en banc).

[11] See LA. REV. STAT. ANN. § 9:2800.54(A).

had Roberts not employed the glasses. Through his testimony Roberts clearly indicated his understanding that safety glasses are not talismanic. In fact, Roberts testified that had he not been wearing the glasses, the wheel fragment could have killed him. The glasses were, and Roberts agreed, obviously not intended to safely deflect large fragments hurled at them at bullet-like speed. These glasses were intended to turn aside small debris that might enter or otherwise injure the eye. The force of the fragment (its mass multiplied by its acceleration) as it was hurled by the spinning wheel was sufficient to dislodge the unsecured glasses to a degree that they struck Roberts's eye. Despite the glasses being subjected to a situation for which they were not intended, they did prevent the object from entering his eye, much less a more vital organ proximate to his eye. Accordingly, without adequate causation, of which none has been shown, no suit under the LPLA can stand.

Unfortunately, tragic results often times do not result in the imposition of corresponding liability.

As summary judgment was appropriate, this Court need not reach the issue of the district court's denial of Roberts's Motion for Reconsideration.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is hereby AFFIRMED.